UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER HEAPHY,

                          Plaintiff,

                                                                                     DECISION AND ORDER

                                                                                                         08-CV-6166L

                          v.

WEBSTER CENTRAL SCHOOL DISTRICT,

                          Defendant.
_____

Plaintiff Jennifer Heaphy ("Heaphy") brings this action against her employer, the Webster Central School District (the "District") alleging violation of the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k) ("PDA"), and hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL").[1] The District now moves for summary judgment (Dkt. #13) dismissing Heaphy's claims. For the reasons that follow, the District's motion is granted, and the complaint is dismissed.

Heaphy is a tenured teacher who has been continuously employed by the District since September 1992. She has worked as an enrichment specialist as well as an elementary level teacher, with a variety of different subject and grade level assignments. In a nutshell, Heaphy alleges that on September 28, 2006, Principal Carmen Gumina, who had heard that Heaphy was pregnant, asked

---

[1] The District argues that plaintiff has failed to file the requisite notice of claim, and that her NYHRL claims should be dismissed. Assuming for purposes of this motion that this Court does have jurisdiction over plaintiff's NYHRL claims, I find that they are subject to dismissal on the same grounds as her claims arising under federal law. *See Ludwig v. Rochester Psychiatric Ctr.*, 2009 U.S. App. LEXIS 21517 at *2 n. 1 (2d Cir. 2009) (Title VII and NYHRL discrimination claims are typically treated as "analytically identical, applying the same standard of proof to both claims").

her about her maternity leave plans, and specifically the need for long-term substitutes during Heaphy's absence. Heaphy characterized Gumina's question as "inappropriate" and refused to discuss the matter. She claims that after the September 28, 2006 discussion – which Heaphy describes as a threatening confrontation – Gumina discriminated and retaliated against her by placing her on a performance improvement plan in November 2006. She further alleges that Gumina was rude to her and refused to speak with her, and that someone took personal items from her classroom.

On or about October 31, 2006, Heaphy filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). Upon receipt of a Right-to-Sue Notice on January 17, 2008, Heaphy timely filed the instant action on April 11, 2008, alleging that the District had subjected her to pregnancy-based discrimination and retaliation under Title VII.

## DISCUSSION

**I.     Summary Judgment**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

While granting Heaphy the liberal interpretation and favorable inferences due to her as a nonmovant, I find that Heaphy has failed to rebut the District's legitimate, non-discriminatory reasons for its interactions with her.

I.  **Heaphy's Pregnancy Discrimination Act Claim**

The PDA, which is an amendment to Title VII, incorporates "women affected by pregnancy" into the definition of prohibited gender-based discrimination, 42 U.S.C. §2000e(k), and requires that pregnant employees not be treated differently from other employees. A plaintiff may establish a *prima facie* case of discrimination under the PDA provisions of Title VII by demonstrating: (1) that she was within the protected group; (2) she was qualified for the position at issue; and (3) she suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See Kerzer v. Kingly*, 156 F.3d 396, 401 (2d Cir. 1998).

Initially, it is questionable whether Heaphy suffered an adverse employment action. An adverse employment action is one which causes a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotations omitted). Heaphy claims only that she was subjected to unnecessarily close monitoring of her performance, that her teaching was evaluated negatively by her principal and vice-principal, she was placed on a performance improvement plan, and removed from an e-mail list which would have notified her of a promotion that was announced six months prior to her return from maternity leave.

Generally, scrutiny of an employee's performance – particular where, as here, the "scrutiny" consisted solely of classroom observations of a type explicitly authorized by plaintiff's collective bargaining agreement – does not rise to the level of an adverse employment action. *See e.g.*, *Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 478-79 (W.D.N.Y. 2005).

Heaphy's claim that Gumina removed her from an e-mail list which would have notified her of available Teacher Leader positions is unsupported by the evidence of record. Gumina testified, and Heaphy does not dispute, that Gumina never notified any teachers about these positions via e-mail. Rather, they were announced at faculty meetings and via notices placed in all teachers' mailboxes, *including Heaphy's*. In short, there is no evidence that Heaphy was treated differently from any other faculty member with respect to notifications about the Teacher Leader openings.

Although the negative performance evaluations upon which Heaphy chiefly relies undisputedly did not result in any change to her pay or benefits, the Second Circuit has "made clear that adverse employment actions are not limited to 'pecuniary emoluments.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), *quoting Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir. 1997). "Lesser actions such as negative employment evaluation letters may also be considered adverse [employment actions]." *Treglia*, 313 F.3d 713 at 720, *citing Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). Whether they do is typically a fact question for the jury. *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004).

While there may be a question of fact as to whether the plaintiff's negative performance evaluations comprised an adverse employment action, particularly in light of the fact that they did not reduce plaintiff's pay or benefits and occurred intermittently with at least one positive performance evaluation by Gumina on January 4, 2007 shortly before Heaphy's maternity leave, that question does not preclude summary judgment. Even assuming *arguendo* that the plaintiff's negative performance evaluations do satisfy her burden to demonstrate an adverse employment action, I find that all of the evidence submitted by Heaphy, including the evaluations, is insufficient to rebut the District's legitimate, non-discriminatory reasons for placing Heaphy on a performance improvement plan and evaluating her more frequently.

Heaphy's case rests almost completely upon her discussion with Gumina on September 28, 2006, and those of plaintiff's subsequent performance evaluations by vice-principal Christine Noeth-Abele ("Abele") and/or Gumina that were negative. First, Gumina's mere inquiry into plaintiff's maternity leave plans does not, as plaintiff assumes, suggest a discriminatory motive. Gumina testified, and Heaphy does not dispute, that Gumina has responded the same way to all teachers for whom an extended leave of absence is expected, regardless of the reason. (Dkt. #13-5 at ¶43, #13-6 at Exh. B). Although the parties dispute the tone and manner of the discussion that followed, there is no suggestion in the record that Gumina made any comment disparaging plaintiff, her pregnancy, or the possibility of maternity leave. Stated simply, there is no evidence that Gumina's questions

were motivated by anything other than a non-discriminatory desire to ensure that the school would be adequately staffed during plaintiff's absence, a matter which was undisputedly within Gumina's purview. *See generally Mazzella v. RCA Global Communications*, 642 F. Supp 1531, 1547-48 (S.D.N.Y. 1986) (request that employees who are aware of the need for maternity leave notify the employer in advance, in order to facilitate adequate staffing, does not violate the PDA), *aff'd without op.*, 814 F.2d 653 (2d Cir. 1987). Indeed, Gumina's concern about having adequate time to secure a long-term substitute was not misplaced: ultimately, Heaphy provided the District with only eight days' notice before departing for maternity leave. (Dkt. #13-4 at Exh. L).

Second, although Heaphy did receive some negative performance evaluations from Gumina and vice-principal Abele and was placed on a performance improvement plan in the time period following her conversation with principal Gumina on September 28, 2006, those actions– which were tempered by at least one positive evaluation – do not reflect a sea change in the District's assessment of plaintiff's performance. To the contrary, the evaluations and performance improvement plan addressed performance issues which had been identified and targeted for improvement in the District's communications with Heaphy well prior to September 28, 2006. In the spring of 2006, Gumina observed that Heaphy's performance and attitude as an enrichment specialist to be unsatisfactory, and discussed the matter with her. In May 2006, Gumina informed Heaphy that she was being transferred back to a teaching position. (Dkt. #13-5 at ¶¶6-7). In June 2006 as part of Heaphy's year-end evaluation, Gumina stated:

> . . . it is my hope that you truly find the passion and drive that you had when you first started here . . . I've debated on whether or not a return to the classroom would reignite your fire . . . even to a small degree . . . If one has an overwhelmingly negative attitude towards our vocation, it will affect those around that person. It can also lead to a minimalist approach to each domain of teaching such as planning and preparation and professional responsibilities. This type of approach can paint a person in a rather unprofessional light that may or may not truly reflect one's true intentions.
>
> Conversely, if one can find some type of positive reinforcement in their job, be it the children or their grade level colleagues, then that person can begin to effectively instruct kids . . . It is my expectation that you will prove this ***converse*** true.

(Dkt. #13-6, Exh. A).

Shortly upon Heaphy's return to the classroom at the beginning of the 2006-2007 school year, vice-principal Abele began to observe, and was further informed by other teachers, that students in Heaphy's classroom were struggling. On September 25, 2006, Abele met with Heaphy and discussed the need to ensure that the students' work was tailored to their level, so as to minimize frustration. Later, on September 28, 2006 – prior to Gumina's discussion with Heaphy – Abele e-mailed Heaphy and advised her that due to her previously-expressed concerns, she would be observing Heaphy sometime in the coming weeks. (Dkt. #13-8 at ¶6, #13-9 at Exhs. A, B). When that observation took place on October 23, 2006, Abele again expressed concern that Heaphy had, *inter alia*, failed to "differentiate instruction to meet the varying needs of [the] students." (Dkt. #13-9 at Exh. C). The performance improvement plan and evaluations that followed revolved around similar concerns, and there is no evidence that the events of September 28, 2006 formed a turning point in the District's assessment of Heaphy's performance, or that the District's attempts to identify and improve difficulties with Heaphy's transition back to classroom teacher, which had been set in motion prior to that date, intensified unexpectedly thereafter.

Nor is Heaphy's disagreement with the District's assessment of her performance sufficient to raise a question of fact as to whether the evaluations were motivated by discriminatory animus. As this Court has previously observed, "[w]hat matters is why [a school district] did what it did, not whether it was wise to do so. Title VII prohibits discrimination, not poor judgment." *Seils v. Rochester City School District*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002), *citing, inter alia, Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process"). Thus, even if the District's performance evaluations or decision to place Heaphy on a performance improvement plan were misguided, ill-founded, or unnecessary, they do not violate Title VII in the absence of evidence of a discriminatory motive. *See Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 290 (S.D.N.Y.

1999) (Sotomayor, C.J.) ("[a]bsent discrimination, an employer may fire an employee for a good reason, bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not based on a discriminatory reason"). Plaintiff has produced no evidence that such a motive was present here, or that she was treated any differently from other teachers. As such, her PDA claim is dismissed.

## II. Heaphy's Hostile Work Environment Claim

Although the District moves to dismiss Heaphy's allegations concerning a hostile work environment, Heaphy contends that she is pursuing no such claim. To the extent that Heaphy alleged a hostile work environment claim, it is therefore dismissed.

## III. Heaphy's Retaliation Claims

Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Claims of retaliation pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). On a motion for summary judgment, a plaintiff must first establish a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. If she does, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. The burden then returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

Here, the protected activity in which Heaphy engaged was the filing of her administrative charge with the Equal Employment Opportunity Commission, which was filed on October 31, 2006. As discussed above, the only factual allegations which post-date her protected activity relate to the

implementation of her performance improvement plan, the District's denial of her request to have her attorney present at a performance improvement plan meeting, the District's decision not to make certain concessions at the December 19, 2006 EEOC mediation, the District's alleged preference that Heaphy seek a transfer, and the alleged disappearance of certain personal items from Heaphy's classroom.

The District has produced evidence, undisputed by Heaphy, that its refusal to permit Heaphy's legal counsel to attend the meeting was consistent with the District's ongoing policy of barring counsel from meetings that did not involve taking disciplinary action. The District did allow union representatives to attend on behalf of faculty, and Heaphy was notified of this right and opted to bring a union representative to the performance improvement plan meeting in question. I further note that the strategic positions taken by the District during the mediation, or its subjective and unfulfilled wish that plaintiff request a lateral transfer, do not comprise adverse employment actions. Finally, with respect to items allegedly stolen from Heaphy's classroom, there is no evidence that anyone employed by the District was responsible, or that the District had any knowledge concerning the individuals responsible.

Again, even assuming *arguendo* that the only remaining evidence (Heaphy's negative performance evaluations) is sufficient to meet Heaphy's burden to establish a *prima facie* case of retaliation, it is insufficient to rebut the District's legitimate, nondiscriminatory reasons for its actions. As discussed in detail above, the evaluations were part of a performance improvement plan, crafted to resolve performance issues that had been identified prior to Heaphy's engagement in protected activity. Heaphy's belief that the evaluations and performance improvement plan were precipitated by her refusal to discuss maternity leave plans with Gumina on September 28, 2006 – or even that Gumina's perceived frustration with that refusal related to Heaphy's pregnancy rather than Heaphy's "disrespectful" attitude in declining to answer his questions – are wholly speculative. Heaphy has produced no evidence that the performance improvement plan or the evaluations were retaliatory, and her retaliation claim is therefore dismissed.

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (Dkt. #13) is granted, and plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 28, 2011